IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MERLINDA PEREA and
FRANCINE PUENTES, as Proposed
Co-Personal Representatives of the
Wrongful Death Estate of JERRY PEREA
and on Behalf of the Minor, BP,

        Plaintiffs,

vs.                             No. CIV 13-263 RB-RHS

CITY OF ALBUQUERQUE,
ALBUQUERQUE CITY POLICE,
APD OFFICER DAVID BACA and
APD OFFICER ANDREW JARAMILLO,

        Defendants.

## PLAINTIFFS' RESPONSE TO DEFENDANTS' "MOTION FOR SUMMARY JUDGMENT REQUESTING DISMISSAL OF PLAINTIFFS' COMPLAINT WITH PREJUDICE, AND MEMORANDUM IN SUPPORT"

PLAINTIFFS, by and through their attorneys, Santiago E. Juárez and Cheryl McLean, hereby respond to the "Motion for Summary Judgment Requesting Dismissal of Plaintiffs' Complaint With Prejudice, and Memorandum in Support" filed herein. For the reasons stated in this response, the Motion should be denied, and this case should be allowed to proceed on the court's trial docket.

## STANDARD FOR SUMMARY JUDGMENT

The movant for summary judgment bears the burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (19386). Summary judgment is proper if there are no genuine issues of fact and the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Celotex*, 477 U.S. at 323. Once the moving party has produced evidence showing a lack of a genuine issue of material fact, the burden shifts to the non-moving party to produce evidence creating a genuine issue of

material fact to be resolved at trial. *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993); *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992). To avoid summary judgment, the non-moving party must present more than "a mere scintilla of evidence." *Grace United Methodist Church v. City of Cheyenne*, 427 F.3d 775, 782 (10th Cir. 2005). Because "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses," *Celotex*, 477 U.S. at 323-24, the party opposing summary judgment "'must set forth specific facts showing that there is a genuine issue for trial,'" *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. In this case, there exist genuine issues of material fact with respect to Plaintiffs' claims that preclude the issuance of summary judgment on behalf of the Defendant.

## STANDARD AS TO POLICE USE OF FORCE

In listing the factors relevant to an excessive force inquiry, the Supreme Court in *Graham v. Connor, 490 U.S. 356, 396 (1989),* cited to *Tennessee v. Garner*, 471 U.S. 1 (1985), stating that "the question is 'whether the totality of the circumstances justifie[s] a particular sort of . . . seizure." 490 U.S. at 396 (quoting *Garner*, 471 U.S. at 8–9). Evading arrest is not the only instance when a seizure can be effected or force can be used. See *Terry v. Ohio*, 392 U.S. 1, 27 (1968) (permitting seizure to conduct search for weapons upon reasonable suspicion); see also *Graham*, 490 U.S. at 396 ("Our Fourth Amendment jurisprudence has long recognized that the

*Perea and Puentes vs. City of Albuquerque, Et Al., USDCNM No. CIV 13-263 RB-RHS*
*Plaintiffs' Response to Defendants' Motion for Summary Judgment*
*Page 2*

right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." (emphasis added)).

There is a use-of-force spectrum, and where along the spectrum the officer's conduct justifiably falls depends on a variety of circumstances. This spectrum exists even when the seizure effected is merely an investigative detention and not an arrest. Compare *United States v. Perdue*, 8 F.3d 1455, 1462 (10th Cir. 1993) (concluding it was not unreasonable for officers to "execute the Terry stop with their weapons drawn" when suspect was believed to be armed and dangerous), with *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1322 (10th Cir. 2002) (Hartz, J., concurring in part, dissenting in part) (noting that "use of handcuffs may have constituted excessive force for the investigative detention"). Only where there are no disputed questions of historical fact does the court make the excessive force determination on its own, such as on summary judgment. See *Keylon v. City of Albuquerque*, 535 F.3d 1210, 1215 (10th Cir. 2008) (noting that "while probable cause is usually a question for the jury, a court should decide it when there is no genuine issue of material fact"); see also *Scott v. Harris*, 550 U.S. 372, 386 (2007) (concluding that officer's conduct in ending high-speed chase was objectively reasonable given undisputed video showing recklessness of fleeing driver). In this case, multiple issues of disputed fact exist as to the detention, tasering and death of Jerry Perea, so that the issuance of summary judgment is not appropriate. Viewed in the light most favorable to the non-moving party, the question of "reasonableness" of the Defendant's actions is an ultimate issue of fact for the jury.

*Perea and Puentes vs. City of Albuquerque, Et Al., USDCNM No. CIV 13-263 RB-RHS*
*Plaintiffs' Response to Defendants' Motion for Summary Judgment*
*Page 3*

# *I.* *STATEMENT OF MATERIAL ISSUES AND MATERIAL ISSUES OF DISPUTED FACT*

Here are the facts that will be established by the deposition excerpts, the interrogatories, and the expert witness report submitted, as well as public sources.

1. The call was made by the mother of the decedents and a neighbor for the welfare of the residents of the house. DISPUTING Defendants' Material Fact 9.

2. When the officers arrived Jerry (the deceased) had left the area on his bike. (Exhibit 1) Depo of Officer Jaramillo at p 17: 9-14; ADMITTED, Defendants' "Material Fact" 13.

3. When Jerry left the area there were no further reports regarding him, the bike or any erratic behavior. Id. at p 56:17-21; UNDISPUTED by Defendants.

4. When the police arrived the only individual to speak with Merlinda, the mother of the decedent, and Fred, the live-in boyfriend, was officer Jaramillo. (Exhibit 2) Depo of Officer Baca at 11:1-2, DISPUTING IN PART Defendants' "Material Fact" 14.

5. Officer Jaramillo was told that Jerry had been acting erratic and had broken something in his room, that he took his bible, got on his bicycle, and left. (Exhibit 1) Deposition of Officer Jaramillo at 17:9-14, 21:7-8, 22:8-10.

6. The officer was told that there had been no acts of violence or threats by Jerry against either of the occupants of the house or against anyone else. There were no threats to return and do violence to anyone. DISPUTING Defendants' Material Facts 10, 12 and 13. (Exhibit 1) Deposition of Officer Jaramillo at 18:12-25, 19:1-25, (Exhibit 2) Deposition of Officer Baca at p 28: 8-10.

*Perea and Puentes vs. City of Albuquerque, Et Al., USDCNM No. CIV 13-263 RB-RHS*
*Plaintiffs' Response to Defendants' Motion for Summary Judgment*
*Page 4*

7. The mother had asked that they do a welfare check on Jerry, not detain him. (Exhibit 1) Deposition of Officer Jaramillo at p. 17: 10-14, DISPUTING IN PART Defendants' Material Fact 9.

8. It was made clear that there were no weapons involved. Undisputed fact. (Exhibit 1) Deposition of Officer Jaramillo at p. 12:23-25, 13:1-6, 22:6-7, (Exhibit 2) Deposition of Officer Baca, p 27:17-19. (Exhibit 3) Dispatch Log 09:34:48.

9. None of the officers went in the home to assess the nature or the extent of any damage. (Exhibit 2) Deposition of Deposition of Officer Baca at p 28:5-7., (Exhibit 1) Deposition of Officer Jaramillo at p. 19:13-25.

10. Officer Jaramillo indicated that when he left the home, before he encountered Jerry, he had the intention of detaining him. (Exhibit 1) Deposition of Officer Jaramillo at p. 22:14-19.

11. When Officer Jaramillo went looking for Jerry, he saw him on the bike and Jerry looked back then started to pedal faster. The officer engaged his siren and emergency equipment. Jerry pedaled faster and kept going. Undisputed fact at (Exhibit 1) Deposition of Officer Jaramillo at p. 68:5-14, 69:3-5.

12. The officer gave chase and stopped Jerry at the "Transmission Shop." (Exhibit 1) Deposition of Officer Jaramillo at p. 29:12-13.

13. Jerry had stopped pedaling. See (Exhibit 1) Deposition of Officer Jaramillo at p. 30:5-8; Exhibit "C" still photograph of Jerry standing up straddling the bike.

14. The officer got out of his car ran to where Jerry was, and immediately struck him in the chest and grabbed for his wrist. (Exhibit 1) Deposition of Officer Jaramillo at p. 30:7-10.

*Perea and Puentes vs. City of Albuquerque, Et Al., USDCNM No. CIV 13-263 RB-RHS*
*Plaintiffs' Response to Defendants' Motion for Summary Judgment*
*Page 5*

15. Prior to the officer physically accosting Jerry there was no verbal command to "Stop! You are under arrest!" or any "community care" statement. (Exhibit 1) Deposition of Officer Jaramillo at p. 31: 24-25.

16. The struggle started immediately after Jerry was pushed off his bicycle. (Exhibit 1) Deposition of Officer Jaramillo at p. 30:5-10.

17. Then he was tased 10 times in approximately 2 minutes time. (Exhibit 1) Deposition of Officer Jaramillo at p. 60: 20-23, 61:4-9, 13-15.

18. Jerry died on the scene twice. (Exhibit 1) Deposition of Officer Jaramillo at p. 47:8 ,p 55:6-8, and (Exhibit 1) Deposition of Officer Baca at p. 22:19-26, 24:21-24.

## ADDITIONAL MATERIAL FACTS

19. Attached to this Response and herein incorporated by reference as Exhibit "D" is the expert report of Ernest Burwell, an expert in police consulting who has reviewed the details of Jerry Perea's death. Mr. Burwell's Report makes a number of relevant observations based on the evidence in this case.

20. Mr. Burwell's Report, at pp 5-6, makes the following observations, based on the evidence that he has reviewed:

- **Jerry Perea Has A Verbal Dispute Only**.

> Merlinda, Jerry Perea's mother, called 911 to report a verbal dispute between her and her son. A second call was made to the APD by Ricardo Astorga, a neighbor, requesting a welfare check on the residents due to their son acting bizarre. This call was nothing more to check on the welfare of the residents. There was never any crime committed by anyone at this time. APD Officers Baca and Jaramillo responded to a call of a mother/son dispute. They contacted Merlinda and Fred Casaus at their residence located at 145 Mescalero NW. The officers were informed that there was no physical contact made by either party and there were no weapons involved. The contact Officer

*Perea and Puentes vs. City of Albuquerque, Et Al., USDCNM No. CIV 13-263 RB-RHS*
*Plaintiffs' Response to Defendants' Motion for Summary Judgment*
*Page 6*

Jaramillo had with Mrs. Perea was very brief and the residence was not checked by the officer's for vandalism.

21. Mr. Burwell continues at pp 6-7 of his report with the following observations, also based on the evidence in this case:

- **Jerry Perea never Committed a Crime.**

    According to the CAD log and the officer's statements, Officers Baca and Jaramillo received information Jerry Perea had left on his bicycle and **no crime had been committed by Jerry Perea** (the son) at the residence where he lives with his parents. The officers were aware Jerry Perea had some type of mental problems or drug history.

- Officers Baca and Jaramillo, with "Air 5" assisting overhead, began to search the area for Jerry Perea. He was not wanted for any crime. Officer Jaramillo located Jerry riding his bicycle, less than nine minutes from the time the call was first dispatched. Officer Jaramillo began following Jerry Perea in his patrol car and did not describe anything unusual about Jerry riding his bicycle. Officer Baca asked Officer Jaramillo if he was aware of the "target hazard" that was placed on this call. Officer Jaramillo said he was aware of that information.

- **Officer Jaramillo used Excessive Force to Knock Jerry Off His Bicycle.**

    After Jerry Perea rode his bicycle into the fenced transmission repair shop, Officer Jaramillo exited his patrol car and ran to where Jerry Perea was on his bicycle next to a chain link fence. Officer Jaramillo never said anything to Jerry, at which time Officer Jaramillo knocked Jerry off of his bicycle into the fence. Jerry was never told he was being detained or arrested by Officer Jaramillo.

- **Officer Jaramillo Used Excessive Force Regarding the Taser.**

    Any use of the Taser on Jerry Perea, including the number and length of applications used on Jerry Perea, was an excessive, unreasonable, and unnecessary use of force. I have attached the Taser data port print out. The total activation times are 46 seconds. The total duration from the beginning of the first Taser application to the last Taser application was one minute and fifty four seconds. The data port information clearly indicates the Tasers were used far beyond the maximum limits. Other training such as The International Association of Chiefs of Police has recommended no more than 3 activations or 15 seconds total. The Taser is capable of total incapacitation even in drive stun. Taser teaches the "Angled Drive Stun". This means with one dart in the person's

*Perea and Puentes vs. City of Albuquerque, Et Al., USDCNM No. CIV 13-263 RB-RHS*
*Plaintiffs' Response to Defendants' Motion for Summary Judgment*
*Page 7*

body, by touching the Taser weapon on another part of the body, the circuit is completed and is no longer drive stun. Officer Jaramillo described in his deposition he had knowledge the Taser would work by touching the weapon to a part of the body with the Taser probes fired.

22. Mr. Burwell's report also cites at p. 7:

The International Association of Chiefs of Police Guidelines, August 2005

D. ECWs and Sudden Death Syndrome:

Limiting the number of energy cycles, the use of continuous cycling of more than 15 seconds, and instances of multiple officer deployments against the same person can help to prevent tetany (muscular spasms) or exhaustion of muscles of respiration and the development of acidosis. Such respiratory impairment, as noted in the previously cited research from British Columbia, "becomes crucial when the [ECW] weapon is used or restraint is applied during or at the end of a prolonged physical struggle." The inability of some subjects to regain free breathing is critical "as the body tries to return to homeostasis and compensate for increased levels of CO2." According to the report, "The state of hypoventilation means that the subject can still breathe, just not at the level their body requires to return to equilibrium. Police may be misled by the fact the subject can still speak, indicating a clear airway, which does not necessarily mean they can breathe at an adequate rate."

## II. **THE RIGHT TO BE FREE FROM THE EXCESSIVE USE OF POLICE FORCE WAS CLEARLY ESTABLISHED AT THE TIME OF JERRY PEREA'S DEATH, AND THE INDIVIDUAL DEFENDANTS ARE THEREFORE NOT ENTITLED TO QUALIFIED IMMUNITY**

The individual Defendants correctly cite the standard for qualified immunity in their brief. To successfully oppose the granting of qualified immunity to the individual officers, the Wrongful Death Estate of Jerry Perea must demonstrate that a constitutional right of the decedent was violated, and that the right was clearly established at the time of Jerry Perea's death. Motion for Summary Judgment at 10, citing *Medina v. Cram*, 252 F.3d 1124, 1130 (10th Cir. 2001) and *Ashcroft v. al-Kidd*, ____ U.S.____, 131 S.Ct. 2074, 2080, 2083 (2011).

*Perea and Puentes vs. City of Albuquerque, Et Al., USDCNM No. CIV 13-263 RB-RHS*
*Plaintiffs' Response to Defendants' Motion for Summary Judgment*
*Page 8*

The Constitutionally-protected right in this case is the right to be free from the excessive use of police force. The standard was established in 1989 by *Graham v. Connor*. *Graham v. Connor*, 490 U.S. 356, 396 (1989). The incidents at issue in this case, culminating in the death of Jerry Perea, occurred on March 21, 2011, some 22 years after the establishment of the standard pursuant to *Graham*. Every reasonable police officer in today's environment in the United States is on notice of the standard established pursuant to *Graham*. Qualified immunity is not available to the individual officers under the circumstances of this case. The remainder of this Response addresses those individual facts and circumstances. The individual Defendants' attempts to "hide" behind the law regarding deployment of tasers, stating that it was not established to be "unreasonable" to deploy a taser against a subject who is "actively resisting" (Motion for Summary Judgment at 18-19) leaps to conclusions that are unjustified, as is demonstrated in the remainder of this Response.

### III. DEFENDANTS USED EXCESSIVE FORCE ON PLAINTIFF, BY USING FORCE WHERE NO FORCE WAS NECESSARY

*A. The undisputed material facts establish that Defendants violated Plaintiff's Fourth Amendment right not to be subjected to excessive force*

By falsely arresting Plaintiff in violation of the Fourth Amendment, Defendants necessarily used excessive force. Both the "push" of the decedent off of his bicycle and the multiple firings of the "taser" to subdue him were unreasonable under the totality of the facts and circumstances of this case. When an officer has the legal right to make an arrest, that right "carries with it the right to use some degree of physical coercion." *Graham v. Connor*, 490 U.S. 356, 396 (1989). The flip side of that coin is that when one does not have a legal right to make an

*Perea and Puentes vs. City of Albuquerque, Et Al., USDCNM No. CIV 13-263 RB-RHS*
*Plaintiffs' Response to Defendants' Motion for Summary Judgment*
*Page 9*

arrest, there is no right to use any degree of force. *Id*. Once an officer has unconstitutionally interfered with an innocent citizen's liberty, all subsequent actions are unconstitutional per se. See *Baptiste*, 147 F.3d at 1256 n.7 ("Because this court concludes that there was not probable cause to support the warrantless arrest, the pat-down search incident to arrest was also improper.").

Claims of excessive force by arrestees detained without a warrant are governed by the "objective reasonableness" standard of the Fourth Amendment. *Frohmader v. Wayne*, 958 F.2d 1024 (10th Cir. 1992). Courts usually rely on three factors to assist in this "reasonableness" determination: (1) the severity of the crime at issue; (2) whether the suspect poses all immediate threat to the safety of the officers; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Hinton v. City of Elwood*, 997 F.2d 774, 780 (10th Cir. 1993)(citing *Graham*, 490 U.S. at 396 (1989)). However, the usual excessive force case involves a plaintiff against whom force was used based on probable cause that the plaintiff committed a crime or posed a threat to the safety of others. This case is completely different. The three factors used in typical cases are simply not instructive because they assume the arrest was lawful from its inception. Because Defendant Jaramillo lacked probable cause to arrest the decedent, Jerry Perea, and had no reason to believe that Jerry Perea posed any threat to Defendant Jaramillo or anyone else, Defendant Jaramillo had no right to use any force against Plaintiff. This Court should determine that the arrest of Jerry Perea was unlawful, and it must necessarily find for his wrongful death estate on his corresponding excessive force claim. Plaintiffs have proven that Defendants illegally arrested Mr. Perea. Even if an investigative or Terry stop was justified—which Plaintiffs do not concede—"handcuffing of the suspect is not ordinarily proper." 4 Wayne

*Perea and Puentes vs. City of Albuquerque, Et Al., USDCNM No. CIV 13-263 RB-RHS*
*Plaintiffs' Response to Defendants' Motion for Summary Judgment*
*Page 10*

R. LaFave, Search and Seizure § 9.2(d) (3d ed. 1996)(internal quotations and citations omitted); *Cortez v. McCauley*, 478 F.3d 1108, 1115-1116 (10th Cir.2007) (en banc) "The use of firearms, handcuffs, and other forceful techniques generally exceed the scope of an investigative detention and enter the realm of an arrest." (Quoting *United States v. Melendez-Garcia*, 28 F.3d 1046, 1052 (*10th Cir.1994*)); (*But see*, e.g., *United States v. Shareef*, 100 F.3d 1491, 1506 (10th Cir. 1996)(restraining suspects during a Terry stop reasonable where suspects posed threat to officer safety); *Terry v. Ohio*, 392 U.S. 1 (1968). To show that the use of handcuffs in a Terry stop does not exceed Terry's limits and convert the stop into a de facto arrest, officers "must be able to point to some specific fact or circumstance that could have supported a reasonable belief that the use of such restraints was necessary to carry out the legitimate purposes of the stop without exposing law enforcement officers, the public, or the suspect himself to an undue risk of harm." *United States v. Acosta-Colon*, 157 F.3d 9, 18-19 (1st Cir. 1998). The essence of the call here was a "welfare check." Jerry Perea had committed no crime. It was the officers who escalated the encounter by becoming physically aggressive with Jerry Perea, who was in the throes of an apparent mental health crisis. Because handcuffing was not appropriate for this encounter, and the brutal use of a taser exceeds by many times the use of handcuffs, Defendants violated Plaintiff's constitutional rights by employing physical force under the circumstances. See *Graham*, 490 U.S. at 396; *Baptiste*, 147 F. 3d at 1256, n.7. Jerry Perea died shortly after this unlawful use of force.

There can be no question that subjectively and objectively Jerry Perea was seized by Officer Jaramillo at the moment that Officer Jaramillo engaged his emergency equipment. At that moment Jerry Perea had committed no traffic or criminal offense for which he should have

*Perea and Puentes vs. City of Albuquerque, Et Al., USDCNM No. CIV 13-263 RB-RHS*
*Plaintiffs' Response to Defendants' Motion for Summary Judgment*
*Page 11*

or could have been detained. *See*, undisputed statement of fact number 17 (Jerry Perea did not speed up and cause automobiles to brake to avoid hitting him until Officer Jaramillo had already engaged his emergency equipment and initiated a stop). If the officer observed any form of illegal activity for which Mr. Perea could have been arrested, it would have been the product of trying to avoid an illegal arrest, if such was the case. Jaramillo's behavior towards Jerry Perea was therefore objectively unreasonable.

Reasonableness is the "touchstone of the Fourth Amendment." *Ohio v. Robinette*, 519 U.S. 33 (1996), 117 S.Ct. 417, 136 L.Ed.2d 347 (1996). As a general matter Tenth Circuit cases hold that, where there are disputed issues of material fact, the question of reasonableness underlying a Fourth Amendment violation is for the jury. That is to way "where there is a question of fact or 'room for a difference of opinion' about the existence of probable cause, it is a proper question for a jury, even though it is normally determined by a court during the warrant application process." *Bruner v. Baker*, 506 F.3d 1021, 1028 (10th Cir. 2007) (citation omitted); see also *Curley v. Klem*, 499 F.3d 199, 211, 215 (3d Cir. 2007) (noting that question whether officer's shooting of plaintiff was reasonable went to the existence of a constitutional violation in the first place and was "an essentially factual question" for the jury).

### B. Physical injury followed shortly by his death supports Plaintiffs' claim that Jerry Perea was subjected to excessive force

That Defendants inflicted serious physical injuries on Plaintiff followed shortly by his death supports the claim that they used excessive force. In order to succeed in a claim of excessive force, a Plaintiff need not even prove any physical injury whatsoever. *See Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1195 (10th Cir. 2001). However, physical injury

*Perea and Puentes vs. City of Albuquerque, Et Al., USDCNM No. CIV 13-263 RB-RHS*
*Plaintiffs' Response to Defendants' Motion for Summary Judgment*
*Page 12*

may be the most obvious injury that flows from the use of excessive force. Yet the interests protected by the Fourth Amendment are not confined to the right to be secure against physical harm; they include liberty, property and privacy interests, a person's sense of security and individual dignity. *Id*. In the case of Jerry Perea, all of these interests were violated, and he died. The expert report of Mr. Burwell, attached as Exhibit D and herein incorporated by reference, demonstrates that the deployment of the taser in this case greatly exceeded recommended guidelines. That this deployment was rapidly followed by Jerry Perea's death is a fact that gives rise to a material issue of disputed fact as to the overuse and misuse of this device. The Burwell report, at pp. 8-9, observes as follows:

> • The Taser was used excessively which goes against the training and recommendations of the Department of Justice Guidelines for Conducted Energy Devices. There are 52 guidelines for the use of conducted energy devices.
>
> I have listed the top seven below.
>
> 1. CEDs should only be used against persons who are actively resisting or exhibiting active aggression, or to prevent individuals from harming themselves or others. CEDs should not be used against a passive suspect.
>
> 2. No more than one officer at a time should activate a CED against a person.
>
> 3. When activating a CED, law enforcement officers should use it for one standard cycle and stop to evaluate the situation (a standard cycle is five seconds). If subsequent cycles are necessary, agency policy should restrict the number and duration of those cycles to the minimum activations necessary to place the subject in custody.
>
> 4. Training protocols should emphasize that multiple activations and continuous cycling of a CED appear to increase the risk of death or serious injury and should be avoided where practical.
>
> 5. Training should include recognizing the limitations of CED activation and being prepared to transition to other force options as needed.

*Perea and Puentes vs. City of Albuquerque, Et Al., USDCNM No. CIV 13-263 RB-RHS*
*Plaintiffs' Response to Defendants' Motion for Summary Judgment*
*Page 13*

6. That a subject is fleeing should not be the sole justification for police use of a CED. Severity of offense and other circumstances should be considered before officers' use of a CED on the fleeing subject.

50. Officers should be aware that there is a higher risk of sudden death in people under the influence of drugs and/or symptoms associated with excited delirium.

- Taser Chest Shots are not Recommended:

Taser Training Bulletin 15.0 , dated October 15, 2009, notifies the Taser user that the preferred target area has changed and center mass chest shots be moved to the lower mass. See below Taser Training Target Area.

The Burwell report also observes, based on the available evidence in this case, that the Defendants, who were only summoned to conduct a "welfare check" on a suspected mentally disordered person, grossly over-utilized physical force. The Burwell report (Exhibit D), at pp. 10-11, observes as follows:

- **Only Looking for Jerry to Check on His Welfare.**

Officers Baca and Jaramillo knew Jerry Perea was suffering from some type of mental disorder. They failed to handle this incident as a person who is mentally ill. Officers are trained to slow down and calm the situation. In this incident the officers had Jerry Perea stopped and should have begun talking to him in a calm manner to help him. Instead of trying to calm the situation the officers aggravated the incident by using red lights and sirens, by chasing Jerry on foot, and by knocking him off of his bicycle. Arizona Peace Officers Standards and Training teach officers how to interact with mentally ill persons. See attached training.

Should an officer determine an individual is mentally or emotionally ill and a potential threat to him/herself or others, or may otherwise require police intervention for humanitarian purposes, the following responses should be taken:

1. If not already present or in route, a backup officer must be requested.

2. Take steps to calm the situation. Where possible eliminate lights and sirens, disperse crowds, and assume a quiet and non-threatening manner when approaching or conversing with the person.

*Perea and Puentes vs. City of Albuquerque, Et Al., USDCNM No. CIV 13-263 RB-RHS*
*Plaintiffs' Response to Defendants' Motion for Summary Judgment*
*Page 14*

3. Move slowly and do not excite the person. Provide reassurance the police are there to help and appropriate care will be provided.

4. Communicate with the person to determine what is bothering him/her. Relate concern for his/her feelings and allow him/her to vent feelings. Where possible gather information about the person from acquaintances and/or family members. Request professional assistance if needed.

5. Do not threaten the person with arrest or in any other manner as this may cause additional fright, stress and potential aggression.

6. Avoid topics which may agitate the person and guide the conversation toward subjects which help bring the person back to reality.

7. Always attempt to be truthful with a mentally ill person. If the subject becomes aware of deception he/she may withdraw from the contact in distrust and may become hypersensitive or retaliate in anger.

8. Care should be taken when dealing with mentally ill persons during interviews and in-custody interviews. Mentally ill persons should never be left alone and if there is any indication of unpredictable or violent behavior two officers should be with the person at all times. The person should be restrained as necessary and searched for weapons.

## IV.
## V. THE DEATH OF JERRY PEREA IS PART OF A "PATTERN AND PRACTICE" OF CIVIL RIGHTS ABUSE BY THE ALBUQUERQUE POLICE DEPARTMENT

The Court may be aware that the United States Department of Justice has recently concluded a "pattern and practice" civil rights investigation of the Albuquerque Police Department and issued findings, concluding that officers of the Albuquerque Police Department have engaged in a pattern and practice of abuse of civil rights through the excessive use of police force. The Court is invited and may wish to take judicial notice of those findings, which have been made public. Among those findings and relevant to this case is the following:

> (2) Albuquerque police officers also often use less lethal force [footnote omitted] in an unconstitutional manner. We reviewed a random sample of the department's use of force reports completed by officers and supervisors between 2009 and early 2013. Our sample consisted of over 200 force reports. We find that officers frequently misused electronic control weapons (commonly referred to by the brand name "Tasers"), [footnote omitted]

*Perea and Puentes vs. City of Albuquerque, Et Al., USDCNM No. CIV 13-263 RB-RHS*
*Plaintiffs' Response to Defendants' Motion for Summary Judgment*
*Page 15*

resorting to use of the weapon on people who are passively resisting, observably nonthreatening but unable to comply with orders due to their mental state, or posed only a minimal threat to the officers. (April 10, 2014 letter from US Department of Justice Findings Letter to Albuquerque Mayor Richard Berry, at p.3 complete text at http://www.justice.gov/crt/about/spl/documents/apd_findings_4-10-14.pdf.)

The USDOJ report goes on to find, in a context relevant to Jerry Perea's case:

> **B. APD Engages in a Pattern or Practice of Unconstitutional Use of Less Lethal Force.**
>
> We find that the department engages in a pattern or practice of unreasonable use of less lethal force. There is a pattern of APD officers using force that is unnecessary and unreasonable against individuals who pose little, if any, threat, or who offer minimal resistance. Officers too precipitously resort to the use of Tasers, prone restraints (referred to as "face-down stabilization techniques" by APD), leg sweeps, front kicks, face-down arm-bar takedowns, and strikes to legs and thighs. We reviewed incidents where officers applied force against individuals who were unable to understand or yield to commands but posed a minimal threat to the officers. Many subjects of excessive force had indications of mental illness, physical disabilities, intoxication, and other incapacity. In most instances, these individuals were engaging in lawful activities or committing minor infractions. (April 10, 2014 letter from US Department of Justice Findings Letter to Albuquerque Mayor Richard Berry, at p.15 complete text at http://www.justice.gov/crt/about/spl/documents/apd_findings_4-10-14.pdf.)

The USDOJ report reviews in detail numerous instances of excessive use of police force by the Albuquerque Police Department, many involving tasers and many resulting in death. A complete incorporation of all of these findings would exceed the page limitation by many times for this Response. However, the findings are available from public sources and are based on APD's own records. *Id*.

## VI. PLAINTIFFS' NEW MEXICO TORT CLAIMS ACT CLAIMS ARE NOT TIME-BARRED

Defendants argue that Plaintiffs' New Mexico Tort Claims Act claims are time-barred. (Motion for Summary Judgment at p.19. This argument is without merit. Defendants essentially

*Perea and Puentes vs. City of Albuquerque, Et Al., USDCNM No. CIV 13-263 RB-RHS*
*Plaintiffs' Response to Defendants' Motion for Summary Judgment*
*Page 16*

argue that, because in their view the appointment of a Wrongful Death Estate Representative was not perfected, the Tort Claims Act claims were not brought within the requisite two-year time period. Motion at p.19, citing NMSA 1978, §41-4-15. This argument places form above substance. This case was filed within the requisite period of time, and requests appointment of Co-Wrongful Death Estate Representatives. The claim was, in fact, filed, and Defendants had notice of the claim within the requisite two-year time period. Delay in the official appointment of a Wrongful Death Estate Representative is not relevant to the inquiry into whether a claim was filed within the requisite time period. In *Chavez v. Regents of the University of New Mexico*, 103 N.M. 606, 711 P.2d 883 (1985), the New Mexico Supreme Court addressed precisely the argument that a wrongful death lawsuit was not timely filed because it was filed by another, and not by the personal representative of the Wrongful Death Estate. The Court rejected the argument, concluding that the case was timely filed in that subsequent perfecting of the naming of the representative "related back" to the original filing. *Id*. at 607, 711 P.2d at 884. It is only required that perfecting of the Wrongful Death Estate Representative's formal appointment be made "within a reasonable time." *Chavez*, 103 N.M. at 612, 711 P.2d at 889.

### VII. THE NEW MEXICO TORT CLAIMS ACT SPECIFICALLY WAIVES IMMUNITY FOR EXCESSIVE USE OF FORCE CLAIMS

NMSA 1978, §41-4-12, reads as follows:

**Liability; law enforcement officers.**

The immunity granted pursuant to Subsection A of Section 41-4-4 NMSA 1978 does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of

*Perea and Puentes vs. City of Albuquerque, Et Al., USDCNM No. CIV 13-263 RB-RHS*
*Plaintiffs' Response to Defendants' Motion for Summary Judgment*
*Page 17*

the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties.

Defendants argue, in their Motion for Summary Judgment, that "Defendants Immunity Has Not Been Waived For Plaintiffs' Wrongful Death Claim Under the Tort Claims Act." (Motion at p.21)  This is an imaginative argument, to say the least, given the plain language of the Tort Claims Act cited above.  The argument is utterly meritless. The Tort Claims Act specifically waives immunity for "personal injury", for "bodily injury", and for "wrongful death" resulting from "assault, battery, false imprisonment, false arrest" and includes a "catch-all" clause waiving immunity for "deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico."  Both the United States Constitution (Amendment IV) and the Constitution of the State of New Mexico (Article II, Section 10) prohibit the use of excessive force.  In fact, it has been repeatedly held that the New Mexico Constitution provides greater protections against unreasonable search and seizure than the United States Constitution.  See *State v. Gomez*, 122 N.M. 777, 932 P.2d 1 (1997) and its progeny.  The facts and circumstances of this case, which are discussed in previous sections of this Response and need not be repeated here, clearly establish that the Wrongful Death Estate of Jerry Perea has adequately alleged violations of both his federally-protected Constitutional rights and his State Constitution-protected rights for which immunity is waived under the New Mexico Tort Claims Act.  To the extent that the defense here attempts to come full-circle and allege that there is no claim under the Tort Claims Act against the officers because "their actions were lawful, and they acted in good faith" (Motion for Summary Judgment at p. 22), these arguments are unavailing for the reasons extensively discussed previously herein.

*Perea and Puentes vs. City of Albuquerque, Et Al., USDCNM No. CIV 13-263 RB-RHS*
*Plaintiffs' Response to Defendants' Motion for Summary Judgment*
*Page 18*

# VIII. DEFENDANTS' ARGUMENTS CONCERNING CLAIMS AGAINST THE OFFICERS IN THEIR OFFICIAL CAPACITIES, THE CITY OF ALBUQUERQUE AND THE "ALBUQUERQUE CITY POLICE"

Plaintiffs concede that "The Albuquerque City Police" and "Albuquerque Police Department" are not independently suable entities, as argued by the defense in its Motion at p.22. However, the City of Albuquerque is properly named as a Defendant in this case, not under a theory of "respondeat superior," but because of the pattern and practice of police abuse that has been found by the United States Department of Justice to exist within the Albuquerque Police Department, an agency of the City of Albuquerque, as recited before herein. In regards to the officers in their official capacities, they are properly sued in both their individual and their official capacities under 42 U.S.C. §1983. The defense seems to concede that claims against the officers in their official capacities are the same as claims against the City of Albuquerque. To the extent that the defense argues that no Tort Claims Notice was given, none is required for the individual defendants in their individual capacities under the Tort Claims Act. Similarly, no notice requirement for the officers, either in their individual or in their official capacities, exists under 42 U.S.C. §1983. As to the City of Albuquerque, the defense motion seems to concede that a Tort Claims Notice was properly and timely given, and this entity should therefore remain in the case.

## CONCLUSION

For all of the foregoing reasons, and for such other and further reasons as may be reasonably apparent to the Court in the premises, the Defendants' motion should be denied, and this case should be allowed to progress on the Court's trial docket.

*Perea and Puentes vs. City of Albuquerque, Et Al., USDCNM No. CIV 13-263 RB-RHS*
*Plaintiffs' Response to Defendants' Motion for Summary Judgment*
*Page 19*

Respectfully Submitted,

*/s/ Santiago E. Juárez*
Santiago E. Juárez, Esq.
Attorney for Plaintiff Merlinda Perea
1822 Lomas Blvd. NW
Albuquerque, NM 87104
(505)246-8499
(505)246-8599 facsimile
santiagojuarezlaw@gmail.com

And

Cheryl K. Mclean
Attorney for Francine Puentes
914 Lomas Blvd. NW
Albuquerque, NM 87102-1954
(505) 243-7343
(505) 243-5265 facsimile
chrymcln@cs.com

I HEREBY CERTIFY that the foregoing Response was filed electronically via the Court's CM/ECF filing system on September _8th_ , 2014, which upon information and belief resulted in its electronic transmission to all parties.

/s/Santiago E. Juarez
Santiago E. Juárez, Esq.

*Perea and Puentes vs. City of Albuquerque, Et Al., USDCNM No. CIV 13-263 RB-RHS*
*Plaintiffs' Response to Defendants' Motion for Summary Judgment*
*Page 20*