IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**MERLINDA PEREA et al,**

    **Plaintiffs,**

vs.                                                               No. CIV 13-263 RB-RHS

**CITY OF ALBUQUERQUE et al**

    **Defendants.**

## DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT REQUESTING DISMISSAL OF PLAINTIFF'S COMPLAINT WITH PREJUDICE

**COME NOW**, Defendants, by and through Assistant City Attorney Stephanie M. Griffin, and hereby state the following for Defendants' Reply to Plaintiffs' Response to Defendants' Motion for Summary Judgment Requesting Dismissal of Plaintiff's Complaint with Prejudice:

## DEFENDANTS' RESPONSE TO PLAINTIFFS' "STATEMENT OF MATERIAL ISSUES AND MATERIAL ISSUES OF DISPUTED FACT"

Page four of Plaintiffs' brief contains the heading "Statement of Material Issues and Material Issues of Disputed Fact." [See Doc. 51] However, Plaintiffs failed to comply with procedure outlined in D.N.M. LR Civ. 56.1(b) and therefore making it difficult to discern, what, if any, fact set forth by Defendants is disputed and what additional facts, if any, Plaintiffs attempt to introduce. Nevertheless, in reviewing this section of Plaintiffs' brief, it appears that Plaintiffs only note that they dispute Fact Nos. 9, 10, 12, 13, and 14 contained in Defendants' brief. However, if the Court reviews the actual record, it will find that Plaintiffs have either not put forward any facts disputing Fact Nos. 9, 10, 12, 13, and 14 or that these facts are not disputed in any material way. Instead, this section of the brief contains the editorial comments of Plaintiffs'

counsel which is not evidence. While a party is free to present legal argument and authority in response to a summary judgment motion, the party must still submit competent, admissible evidence in support of every factual statement on which he relies. *See Tran v. Sonic Indus. Servs.*, Inc., 490 F. App'x 115, 118 (10th Cir. July 19, 2012) (unpublished) (plaintiffs "must do more than provide their subjective interpretation of the evidence, they must marshal admissible evidence of material fact") (citations omitted). Nevertheless, although Defendants take issue with the editorial comments set forth in Fact Nos. 1 through 18 of Plaintiffs' brief, Defendants do not dispute the actual testimony presented by Plaintiffs as this testimony does not materially differ from what Defendants have cited in support of their motion.

**DEFENDANTS' RESPONSE TO PLAINTIFFS' "ADDITIONAL MATERIAL FACTS"**

In setting what they purport to be "additional material facts," Plaintiffs submit a report from a purported expert, Ernest Burwell. However, pursuant to Fed. R. Civ. P. 37(c)(1) and Fed. R. Civ. P. 56(c)(2), Defendants object to Plaintiffs' submission of this "expert report" as it is untimely as well as inadmissible and should therefore be stricken from the record.

On December 4, 2013, the parties submitted a Joint Status Report wherein it was agreed that "[r]eports from retained experts under Rule 26(a)(2) due:" March 10, 2014 from Plaintiffs and April 11, 2014 from Defendants. [See Doc. 26 at p. 11] After the Joint Status Report was filed, the Court permitted the parties even more time than they had agreed to by which to submit expert reports. Specifically, the Magistrate Judge ordered:

> Plaintiff shall identify to all parties in writing any expert witness to be used by Plaintiff at trial and to provide expert reports pursuant to FED. R. CIV. P. 26(a)(2)(B) **no later than April 10, 2014**. All other parties shall identify in writing any expert witness to be used by such parties at trial and to provide expert reports pursuant to FED. R. CIV. P. 26(a)(2)(B) no later than May 9, 2014.

[See Doc. 27 at p. 2 (emphasis added)]

On April 14, 2014, which was four days past Plaintiffs' expert deadline, the parties filed a "Joint Motion to Extend Expert Deadlines" wherein Plaintiffs represented: "Counsel for the Plaintiffs is attempting to locate an Expert Witness regarding the effects of tasing. Counsel has located one person and is working on scheduling an appointment at this time." [See Doc. 35 at p. 1] In this motion, Plaintiffs requested to have until April 21, 2014 by which to submit their expert disclosures. *Id.* Defendants only joined in the motion because their expert deadline was affected. On April 16, 2014, the Magistrate Judge entered a text entry order stating that "Plaintiffs' expert deadline is April 21, 2014." [See Doc. 37] As reflected by the Certificate of Service filed on April 23, 2014, Plaintiffs did not even meet this deadline as Plaintiffs served their disclosures two days late while at the same time filed an unopposed motion to so that the expert disclosures would be deemed timely. [See Docs. 38 and 39] The Court entered a text entry order granting this motion on June 20, 2014 [See Doc. 42] However, even though Plaintiffs were granted multiple extensions, Plaintiffs only submitted the names of their purported experts and no expert reports as required by Fed. R. Civ. P. 26(a)(2)(B). [See Exhibit M attached - Plaintiffs' Expert Disclosures]

As illustrated in the preceding paragraph, Defendants have been conciliatory in not opposing Plaintiffs' multiple requested extensions. In return, Plaintiffs sand-bagged Defendants with the disclosure of an untimely report dated September 6, 2014 which was disclosed to Defendants for the very first time in the form of an exhibit to Plaintiffs' response brief which was filed on September 9, 2014. [See Doc. 52] This is a prime illustration of the cliché: No good deed goes unpunished.

This report has not only been submitted well beyond Plaintiffs' expert deadline but it is also submitted well beyond the July 31, 2014 discovery deadline which had also been extended

at Plaintiffs' request. [See Doc. 46] Defendants are prejudiced from this untimely disclosure because Defendants had no way of addressing or rebutting this report prior to the filing of Defendants' summary judgment motion. Had this report been submitted as required, then Defendants would have had an opportunity to have their expert rebut these opinions or even depose Plaintiffs' expert about his opinions. Defendants would have also filed a *Daubert* motion challenging Mr. Burwell's methodology. According to Rule 37(c)(1), a party that fails to provide information as required under Rule 26(a) is not permitted to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless. Plaintiffs have been given multiple opportunities to comply with their expert disclosures and they have not provided any justification whatsoever as to why they disclosed this report over five months past the extended expert disclosure deadline and over one month past the extended discovery deadline. Consequently, due to Plaintiffs' non-compliance with their discovery obligations, Plaintiffs should be precluded from using their expert and their expert's opinions to attempt to preclude Defendants from prevailing upon their summary judgment motion.

This Court should also not consider this untimely "expert report" because it is otherwise inadmissible and therefore Defendants object pursuant to Fed. R. Civ. P. 56(c). Rule 702 requires that expert opinions, to be admissible in federal court, must have not only a reliable methodology but also a sufficient factual basis and a reliable application of the methodology to the facts. *See Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 429 (6th Cir. 2007); *United States v. Mamah*, 332 F.3d 475, 477-78 (7th Cir. 2003); *see also Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1088 (10th Cir. 2000). In this regard, Mr. Burwell's opinions are inadmissible under Fed. R. Evid. 702 because they are conclusory in nature; fail to take into

account the totality of circumstances; and based upon inaccurate accounts of the record and flawed assumptions as shown as follows:

    A.    Plaintiffs' Fact 19 – This is not a fact, but rather a summation made by Plaintiffs of their purported "expert report."

    B.    Plaintiffs' Fact 20 – This opinion of Mr. Burwell is conclusory and immaterial. Further, it does not take into account the totality of the circumstances. For instance, in citing to the 911 call, Mr. Burwell fails to acknowledge that Mrs. Perea first told the operator: "Yes. I am calling from 145 Mescalero Road, Northwest. My son is on very bad drugs. And he's been picked up before I wish they would come and take him before he hurts us." [See Notice of Lodging - "Exhibit A" - 911 Recording at 00:03 – 00:14; "Exhibit B" – 911 Recording Transcript at 2:3-6] Mr. Burwell also fails to mention that the record reflects that decedent Jerry Perea, had been throwing things inside of the residence and that although the officers were advised that there were "negative weapons," there was information that there was a hazard warning placed on the residence located at 145 Mescalero Road alerting officers to use caution. [Exhibit C at 12:6-13:2; 14:9-20]

    C.    Plaintiffs' Fact 21 – Mr. Burwell's opinion is conclusory, fails to take into account the totality of the circumstances, and is based upon inaccurate information. For instance, he erroneously states that Officer Jaramillo "did not describe anything unusual about Jerry riding his bicycle." In making this statement, he has obviously ignored Officer Jaramillo's testimony where he described that Mr. Perea had eluded him and went straight through 4th Street on his bike causing a few motorists to slam on their brakes to avoid hitting him. [Exhibit C at pp. 23-24] He also ignores the testimony from all of the eyewitnesses and Officer Baca and

5

Officer Jaramillo describing Mr. Perea's resistance as well as Mr. Perea striking Officer Baca and Officer Jaramillo.

Mr. Burwell also concludes that "Jerry was never told he was being detained or arrested by Officer Jaramillo." This is immaterial and is also not constitutionally required. *See Kladis v. Brezek*, 823 F.2d 1014, 1018 (7th Cir. 1987) (cited with approval by *Rudd v. Graves*, 22 Fed. Appx. 954, 955 (10th Cir. 2001) (unpublished opinion)) (failing to warn of arrest does not render the arrest unlawful.))

Mr. Burwell also makes a statement that the time between the first taser application until the last taser application was one minute, fifty-four seconds, but he fails to mention that there were pauses between taser applications in order to afford Mr. Perea an opportunity to comply with the multiple commands he was given and that the lapel video demonstrates that Mr. Perea had resisted for approximately 2 minutes and 47 seconds during this encounter. In fact, Mr. Burwell does not state anywhere in his report that he even viewed the lapel videos. He also states in his report that Mr. Perea was struck in the heart with the taser. However, there is no such evidence in the record to support this claim and he cites to nothing in the record to support this conclusion. Regardless, Officer Jaramillo described that Mr. Perea pulled the prongs from this chest area and the video also shows that Mr. Perea was able to continue to violently resist the officers even after the first taser application in the probe mode.

In sum, Mr. Burwell improperly attempts to usurp the role of this Court in opining that the use of the taser was "excessive, unreasonable, and unnecessary." "[A]n expert may not state his or her opinion as to legal standards nor may he or she state legal conclusions drawn by applying the law to the facts." *Okland Oil Co. v. Conoco Inc.*, 144 F.3d 1308, 1328 (10th Cir. 1998) (citing *A.E. ex rel. Evans v. Indep. Sch. Dist. No. 25*, 936 F.2d 472, 476 (10th Cir. 1991)).

His opinions are also unhelpful and he fails to dispute any of the facts set forth by Defendants in their motion and therefore these opinions fail to create a genuine issue of fact to preclude summary judgment. *See Medina v. Cram*, 252 F.3d 1124, 1133 (10th Cir. 2001) ("We therefore follow the well-settled principle that an expert opinion may not be sufficient to overcome summary judgment if 'it is conclusory and thus fails to raise a genuine issue of material fact.'" (internal citations omitted)).

D. Plaintiffs' Fact 22 – This is not a fact, but rather Mr. Burwell's recitation to purported guidelines set forth by the International Associate of Chiefs of Police which appears to cite a separate article. Although Defendants are lost as to Mr. Burwell's point, his recitation to these guidelines, if they are indeed guidelines, are of no consequence. *See Medina*, 252 F.3d at 1133 (finding that an expert's ultimate conclusion that the officers' use of force did not conform with accepted police guidelines and practices and was, therefore, excessive does not create a genuine issue of fact and also cannot form the basis for liability because claims based on violations of state law and police procedure are not actionable under § 1983)

## LEGAL ARGUMENT

Plaintiffs' arguments presented in opposition to Defendants' motion are as unavailing as the opinions of their "expert." To begin with, instead of acknowledging that they have not pled any factual averments against the City of Albuquerque and/or the "Albuquerque City Police" concerning this incident, Plaintiffs try to assert a Section 1983 municipal liability claim merely by referencing the April 10, 2014 Department of Justice ("DOJ") Letter sent to the Mayor for the City of Albuquerque. However, this letter is not evidence which is admissible as required under Fed. R. Civ. P. 56(c)(2). *See DeSantis v. Napolitano*, CIV 08-1205 JB/KBM, 2010 WL 2292592, *23 (D.N.M. May 26, 2010)(Browning, J.)(citing *Ram v. New Mexico Department of*

7

*Environment*, No. CIV 05–1083 JB/WPL, 2006 WL 4079622 (D.N.M. Dec.11, 2006) (Browning, J.)) ("This Court has previously held that letters, determinations, and decisions of other federal agencies—specifically, the Human Rights Division, the Equal Employment Opportunity Commission, and Department of Justice—were inadmissible because they lacked adequate indicia of reliability.")

The authors of the letter also contradict themselves by stating that "While most force used by APD officers is within these strictures [the Fourth Amendment], a significant amount falls short of these requirements." [See Letter at p. 1, ¶ 3] The letter does not cite the present lawsuit or mention that the authors reviewed documents from this case or interviewed any of the parties or witnesses involved in this specific case. Therefore, it is impossible to discern from this letter as to whether the subject incident involved in this lawsuit is the among the category of the "most force" used by APD officers within the Fourth Amendment strictures or is among the alleged "significant amount" falling short of these requirements. As the Honorable James O. Browning recently opined:

> While these findings support, at least to some extent, [Plaintiff's] allegations that the City of Albuquerque has a custom or policy of allowing its police officers to use excessive force, [Plaintiff] has not produced evidence to link such a policy, if it exists, to the person who tackled him, nor has he shown that such a policy, if it exists, moved the John Does to violate [Plaintiff's] constitutional rights.

*See Sanchez v. City of Albuquerque et al*, CIV 12-cv-01161-JB-KBM, Doc. 44 Memorandum, Opinion, and Order Filed 04/30/14 at pp. 31-32 (emphasis added ). Therefore, this Court should not give preclusive effect to the DOJ's opinions despite Plaintiffs' implications that it should.

With regard to their arguments concerning the excessive force and battery claims, Plaintiffs fail to acknowledge or even reference the evidence which shows that the officers had reasonable suspicion to believe that Mr. Perea was involved in a domestic dispute with his

8

mother, Merlinda Perea, and that he needed to be placed into protective custody which the officers had a legal obligation under New Mexico law to investigate. *See* NMSA § 29-1-1; § 40-13-7(B) ; NMSA § 43-1-10(A)(3). Officer Jaramillo had also witnessed Mr. Perea commit multiple traffic violations which Plaintiffs fail to address in their brief. Instead, Plaintiffs just make blanket assertions that Mr. Perea was arrested and have even requested that this Court find that such arrest was unlawful. [See Doc. 51 at p. 10] However, Plaintiffs have not pled an unlawful arrest claim in their latest amended complaint and they have not filed any dispositive motions for summary judgment to even request any such relief.

In addition to making a conclusory statement that Mr. Perea was unlawfully arrested, Plaintiffs also proclaim: "Even if an investigative or Terry stop was justified---which Plaintiffs do not concede----"handcuffing of the suspect is not ordinarily proper." [See Doc. 51 at p. 10 (internal citations omitted) This argument is flawed because Mr. Perea was not handcuffed when Officer Jaramillo first contacted him. Instead, Officer Jaramillo pushed Mr. Perea from his bike in order to remove him from the bike since Mr. Perea was attempting to elude him and was riding it in a careless manner. Under the circumstances, this conduct was not unreasonable. *See, e.g., Segura v. Jones*, 259 F. App'x 95, 104 (10th Cir. 2007). Also, "the Fourth Amendment does not require officers to use the best technique available as long as their method is reasonable under the circumstances." *Dickerson v. McClellan,* 101 F.3d 1151, 1160 (6th Cir.1996). The reasonableness standard also does not require that officers use alternative less intrusive means. *Medina*, 252 F.3d at 1133. As a final point on this issue, contrary to Plaintiffs' assertion, handcuffing is often found to be a proper technique to effect a detention:

> There are no hard-and-fast rules regarding the reasonableness of force used during investigatory stops, and prior cases have eschewed establishing any bright-line standards for permissible conduct. It is clear, however, that, because safety may require the police to freeze temporarily a potentially

9

> dangerous situation, both the display of firearms and the use of handcuffs may
> be part of a reasonable *Terry* stop. *See, e.g., United States v. Miller,* 974 F.2d
> 953, 957 (8th Cir.1992) (handcuffs); *United States v. Clipper,* 973 F.2d 944,
> 951–52 (D.C.Cir.1992) (firearm), *cert. denied,* 506 U.S. 1070, 113 S.Ct. 1025,
> 122 L.Ed. 2d 171 (1993); *United States v. Lechuga,* 925 F.2d 1035, 1040
> (7th Cir.1991) (firearm); *Alexander,* 907 F.2d at 273 (firearm); *United States v.
> Hastamorir,* 881 F.2d 1551, 1557 (11th Cir.1989) (handcuffs).

*United States v. Merkley*, 988 F.2d 1062, 1064 (10th Cir. 1993); *see also United States v. Albert,* 579 F.3d 1188, 1195 (10th Cir.2009)("[W]e have approved the use of handcuffs in the context of a *Terry* stop.") It certainly was reasonable to handcuff Mr. Perea after he had battered the officers. *See Gross v. Pirtle*, 245 F.3d 1151, 1158 (10th Cir. 2001)( In making an arrest, officers may "use some degree of physical coercion or threat thereof to effect it." )

In arguing that the push was excessive, Plaintiffs maintain that they do not need to prove any physical injury whatsoever. [See Doc. 51 at p. 12 (citing *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1995 (10th Cir. 2001)] However, Defendants did not argue that Plaintiffs had to prove that a physical injury resulted from the push. Instead, Defendants stated that a claim for excessive force requires *some actual injury* that is not de minimis, be it physical or emotional. *See Cortez v. McCauley*, 478 F.3d 1108, 1129 (10th Cir. 2007). In this case, there is no evidence in the record that Mr. Perea suffered any actual injury from the push that was beyond de minimus.

In arguing that the taser was an excessive use of force, Plaintiffs just rely upon their expert's conclusory opinions that the use of the taser was allegedly excessive. However, for the reasons already cited herein, this opinion should be stricken and discounted since they have been shown to be fundamentally flawed and inadmissible.

In arguing that the law was clearly established, Plaintiffs improperly do so in broad terms instead of within the context of the circumstances faced by Officers Jaramillo and Baca. See

10

*Saucier v. Katz*, 533 U.S. 194, 201 (2001) (the clearly established inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." ) As explained in Defendants' Motion, prior to March 21, 2011, the use of the taser has been held to be a reasonable use of force when a person is actively resisting and Defendants have been unable to locate any clear weight of authority which holds otherwise. Indeed, the Tenth Circuit said in 2013 *Wilson v. City of Lafayette*, 510 F. App'x 775, 777 (10th Cir. 2013) *cert. denied*, 134 S. Ct. 164, 187 L. Ed. 2d 42 (U.S. 2013) that the law was not so clearly established holding otherwise. Plaintiffs have failed to distinguish this cases or cite to any case whatsoever which holds that excessive force is used via a taser when a person is actively resisting. Likewise, given the holdings in *Saucier*, 533 U.S. at 209 and in *Cortez,* 478 F.3d at 1129; *Segura*, 259 F. App'x at 104*;* and *Gross*, 245 F.3d at 1158, Officer Jaramillo would not have been on notice that he allegedly violated clearly established law when he pushed Jerry Perea from his bicycle.

Defendants moved to dismiss Plaintiffs' state law claims on statute of limitations grounds as it was Defendants' position that the initial complaint filed by Plaintiffs was deemed a nullity for which there is no relation back. After researching this issue further, Defendants have found that based upon the decision of *U.S. ex rel. Koch v. Koch Indus., Inc.*, 188 F.R.D. 617, 622 (N.D. Okla. 1999), this Court will likely relate back the latest amended complaint and therefore Defendants' withdraw their statute of limitations arguments in support of their motion to dismiss. Nevertheless, with respect to the substantive argument concerning Plaintiffs' purported tort claim, Plaintiffs' have misapprehended the defense argument made in the motion. Defendants acknowledge that Plaintiffs can assert a Wrongful Death Claim under the New Mexico Tort Claims Act and did not represent otherwise. Instead, the heading contained in Defendants' motion stated that Defendants' immunity had not been waived. In support of Defendants'

11

contention, Defendants stated: In the instant case, Officer Jaramillo and Officer Baca's immunity has not been waived because "excessive force" is not a tort listed under Section 41-4-12 for which immunity has been waived and Defendants pointed out that there are also no factual allegations in the complaint [Doc. 21] that they unlawfully touched or applied force to Mr. Perea. Therefore it is Plaintiffs' complaint which is flawed, not the defense arguments.

**WHEREFORE,** Defendants request that this Court grant Defendants' Motion for Summary Judgment Requesting Dismissal of Plaintiff's Complaint with Prejudice.

Respectfully submitted,

CITY OF ALBUQUERQUE
David Tourek, City Attorney

/s/ Stephanie Griffin
Assistant City Attorney
P. O. Box 2248
Albuquerque, New Mexico 87l03
 (505) 768-4500

*Attorney for Defendants*

I hereby certify that a true copy of the foregoing was served via NEF on September 22, 2014 to:

Santiago Juarez
1822 Lomas Blvd. NW
Albuquerque, NM 87104

Cheryl K. McLean
914 Lomas Blvd. NW
Albuquerque, NM 97102-1954

*Attorneys for Plaintiffs*

/s/ Stephanie M. Griffin, Assistant City Attorney